CHARLES ADLER AND EDWINA ADLER, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 19836–83.     Filed October 7, 1985.

*Alan A. Davidson*, for the petitioners.
*Caroline R. Ades*, for the respondent.

## OPINION

KÖRNER, *Judge*: Respondent determined a deficiency in petitioners' income tax for the calendar year 1978 in the amount of $25,765. After agreement by the parties on an unrelated matter,[1] the sole issue which we must determine is whether respondent's statutory notice of deficiency for 1978 was issued after the expiration of the effective statute of limitations under section 6501.[2]

The case was submitted to the Court on a fully stipulated set of facts and exhibits pursuant to the provisions of Rule 122, and our findings of fact herein are based upon such stipulated facts and documents.

At the time their petition was filed herein, petitioners were residents of Kinnelon, New Jersey.

Petitioners timely filed their joint individual income tax return for the calendar year 1978 with respondent at Holtsville, New York. On July 20, 1979, petitioners filed Form 1040X, amending their 1978 income tax return. The changes related to capital gain income, interest income, and dividend income, and disclosed an additional tax liability, which respondent assessed on or about February 4, 1980. On March 17, 1981, petitioners and respondent executed a partial agreement of increased tax liabilities for 1978, arising from a reduction in the sales tax deductions claimed by petitioners. The agreement executed by petitioners consenting to the assessment of such additional deficiencies stated on its face that it did not include any agreement as to adjustments relating to petitioners' participation in an entity known as Envirogas Drilling, and

---

[1] The parties have agreed that respondent's examination of petitioners' 1981 return will determine the amount of investment tax credit carryback to the year 1978 to which petitioners are entitled in that year, and that such amount may be incorporated in the recomputation of tax liability for 1978 which will be entered as the decision of this Court pursuant to Rule 155.

[2] All statutory references are to the Internal Revenue Code of 1954 as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.

stated that any adjustments related to that entity would be proposed upon completion of a further examination. In May 1982, petitioners filed a second form 1040X, further amending their 1978 income tax return, and claiming an increased investment tax credit for the year 1978.[3]

Among the items reported in petitioners' 1978 return were losses, and related items, with respect to certain limited partnership interests which petitioner Charles Adler held in certain partnerships, as follows:

(1) Petitioner Charles Adler held limited partnership interests in seven limited partnerships, grouped together under the heading of "Envirogas Drilling Programs." The results of these seven partnerships were combined for purposes of reporting in petitioners' return, and a single net loss figure was reported. Other pertinent figures with respect to these seven partnerships were likewise aggregated for tax reporting purposes, e.g., excess intangible drilling costs, tax preference net income or loss, and depletion.

(2) Petitioner Charles Adler had a limited partnership interest in an organization known as "Perry Drilling 1978, Ltd.," from which a net loss for 1978 was likewise reported.

Respondent undertook an audit of the partnership returns of the seven partnerships in the Envirogas Drilling Programs group. As the result of a partial audit of these returns, respondent and petitioner agreed upon various adjustments to the income, deductions, and/or credits in six of the seven Envirogas partnerships, and petitioners and respondent entered into a partial agreement, as the result of which petitioners' distributive share of losses from the Envirogas Drilling Programs was reduced by $9,326 for the taxable year 1978. As in the case of the prior agreement between the parties, this agreement, dated December 16, 1982, was specific that it was only a partial agreement with respect to that year.

Apparently in recognition of the fact that a complete examination of petitioners' affairs and 1978 return was not yet concluded, petitioners, on January 20, 1982, executed on Form 872-A a "Special Consent to Extend the Time to Assess Tax" with respect to the calendar year 1978. Said consent was accepted on behalf of respondent on January 29, 1982. Under

---

[3]See note 1 *supra.*

the terms of the agreement, the statute of limitations with respect to respondent's right to assess deficiencies in petitioners' 1978 income was extended for an indefinite period. The agreement specified that the indefinite extension of the statute of limitations would be terminated only as follows, viz, on or before 90 days after the first to occur of the following events: (a) notification in writing by either party to the other party of the termination of the Special Consent, on Form 872-T, or (b) the issuance by respondent of a statutory notice of deficiency for the year 1978.

In addition, the Special Consent agreement entered into by the parties was further limited in its scope, in that the agreement specifically provided as follows:

The amount of any deficiency assessment is to be limited to that resulting from any adjustments to (1) items affected by the continuing tax effects caused by adjustments to any prior tax return; (2) your distributive share of any items of income, gain, loss, deduction or credit of, or distribution from the entities known as Envirogas Drilling Programs; (3) the tax basis of your interest in Envirogas Drilling Programs; (4) the return of the aforementioned entity which also affects your return and; (5) including any consequential changes to other items based on such adjustment.

The use of the term entity is without prejudice to the right of the commissioner to to [sic] challenge whether such entity exists, or, if existing, the character of such entity.

Incorporated with petitioners' 1978 tax return was Form 4625 (Computation of Minimum Tax — Individuals) in which petitioners reported their items of tax preference, as defined by section 57, for purposes of the minimum tax imposed by section 56. The return form reported the following amounts of tax preference items:

| | |
|---|---|
| Depletion | $2,958 |
| Capital gains | 813,944 |
| Intangible drilling costs | 15,581 |
| Total tax preference items reported | 832,483 |

The above reporting of tax preference items in petitioners' 1978 return was in error in at least two respects:

(1) No amount should have been reported as a tax preference item from depletion.

(2) The correct figure for intangible drilling costs should have been $191,474.[4]

The above errors were committed by petitioners' tax return preparer, who misinterpreted and incorrectly reported on Form 4625 figures supplied to petitioners by Envirogas Drilling Program on Schedule K-1 which gave, separately and in total, pertinent figures with respect to the results of the seven Envirogas Drilling Program partnerships in which petitioner Charles Adler was a participant in 1978. Such schedule was not included as a part of petitioners' return, and the errors were not apparent from the return itself or any schedule attached thereto. The tax preference item for intangible drilling costs, as it related to the Perry Drilling 1978 Ltd., in the amount of $15,581, was correctly reported.

On April 14, 1983, the statutory notice of deficiency at issue herein was mailed to petitioners. At that time, neither petitioners nor respondent had terminated the period of assessment for the year 1978 by notification to the other party, as provided in Form 872-A.

The sole issue between the parties is whether respondent's statutory notice of deficiency was timely issued within the applicable period of limitations provided by section 6501(a).[5] Petitioners contend that respondent's statutory notice was not timely issued under the applicable 3-year statute. Respondent contends that the notice of deficiency was timely sent within the period of a valid consent executed by petitioners, extending the statute of limitations, as provided in section 6501(c)(4).[6]

---

[4]Computed as follows:

| | |
|---|---:|
| Intangible drilling costs from Envirogas Drilling Program | $178,851 |
| Less:  Amount as reported | − 2,958 |
| | 175,893 |
| Add: Perry Drilling 1978 Ltd | + 15,581 |
| Total intangible drilling costs | 191,474 |

[5]As relevant herein, sec. 6501(a) and (b) provides as follows:

(a) GENERAL RULE. —Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

(b) TIME RETURN DEEMED FILED.—

(1) EARLY RETURN.—For purposes of this section, a return of tax imposed by this title, * * * filed before the last day prescribed by law or by regulations promulgated pursuant to law for the filing thereof, shall be considered as filed on such last day.

[6]As relevant herein, sec. 6501(c)(4) reads as follows:

(4) EXTENSION BY AGREEMENT.—Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, * * * both the Secretary and the

In opposition to respondent's claim of a valid consent extending the period of limitations herein, petitioners urge that the consent which they issued was strictly limited in its scope to certain types of adjustments which respondent was permitted to make to petitioners' return, and that the adjustments which respondent made were outside the scope of that limited consent, and that the statutory notice herein was therefore untimely and invalid.

The bar of the statute of limitations is an affirmative defense, and the party raising it must specifically plead it and carry the burden of proof with respect thereto. Rules 39, 142(a). Where the party pleading such issue makes a showing that the statutory notice was issued beyond the normally applicable statute of limitations, however, such party has established a prima facie case. At that point, the burden of going forward with the evidence shifts to the other side, and the other party has the burden of introducing evidence to show that the bar of the statute is not applicable. Where the other party makes such a showing, the burden of going forward with the evidence then shifts back to the party pleading the statute, to show that the alleged exception is invalid or otherwise not applicable. The burden or proof, i.e., the burden of ultimate persuasion, however, never shifts from the party who pleads the bar of the statute of limitations. See *Stern Bros. & Co. v. Burnet*, 51 F.2d 1042 (8th Cir. 1931), affg. 17 B.T.A. 848 (1929); *Concrete Engineering Co. v. Commissioner*, 58 F.2d 566 (8th Cir. 1932), affg. 19 B.T.A. 212 (1930); *Estate of Williams v. Commissioner*, T.C. Memo. 1955–321.

In the instant case, as we have found, petitioners timely filed their joint tax return for 1978, which means that it is deemed to have been filed on April 15, 1979. Sec. 6501(b). Under ordinary circumstances, then, the period within which respondent could validly issue a notice of deficiency with respect to the year 1978 would have expired on April 15, 1982. Sec. 6501(a). Respondent's statutory notice herein was not issued until April 14, 1983. Petitioners therefore established a

taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

prima facie case that the statutory notice was barred by the period of limitations, and the burden of going forward then shifted to respondent.

Respondent met that burden by introducing in evidence a consent, valid on its face and executed prior to the expiration of the 3-year statute, extending the period of limitations with respect to the year 1978 indefinitely, subject to termination as therein provided, and as we have found in our findings of fact. Respondent further established that no such termination had taken place at the time his statutory notice of deficiency herein was issued. The burden of going forward then shifted back to petitioners to show that such consent was ineffective to extend the period of limitations until the time respondent's statutory notice herein was issued on April 14, 1983. Petitioners seek to meet that burden by advancing two separate and unrelated arguments:

(1) Petitioners argue that the errors committed by their tax return preparer in Form 4625, as outlined in our findings of fact, were mere mathematical or clerical errors, within the meaning of section 6213(b)(1), and that such mathematical or clerical errors are to be corrected by respondent through the use of the summary assessment procedures provided in said subsection, without the issuance of a statutory notice of deficiency which would give this Court jurisdiction under section 6213(a). This being true, petitioners argue that the consent which they issued on Form 872-A could not, as a matter of law, extend the period of limitations within which respondent could use his available summary assessment procedures to correct such mathematical or clerical errors.

We need not decide this novel issue, for which petitioners cite no authority, because the whole argument rests upon the premise that the adjustments made by respondent here constituted the correction of a "mathematical or clerical error appearing on the return" within the meaning of section 6213(b)(1), and we hold that they did not.

Section 6213(f)(1) (now section 6213(g)(1)) defines a "return" to include "any return, statement, schedule, or list, and any amendment or supplement thereto, filed with respect to any tax imposed by subtitle A or B, or chapter 41, 42, 43, or 44." It is thus clear that the Form 4625 attached to petitioners' 1978

return was part of their "return" within the meaning of the statute.

Section 6213(f)(2) (now section 6213(g)(2)) further provides a definition of "mathematical or clerical error" as that phrase is used in section 6213(b)(1).[7] An examination of that subsection makes it clear that the errors which were committed in petitioners' return do not fit within any of the given definitions of mathematical or clerical error. What are present here are not typographical errors, or errors of addition, subtraction, multiplication, or division which would be apparent on the face of the Form 4625 or from any other document comprising petitioners' return. Nor were the stipulated errors inconsistent with any other item shown in the return which would permit respondent to detect and correct them. Rather, the errors committed here by the tax return preparer were substantive: he reported one figure as representing depletion, when in fact no such figure should have been reported, and he reported another figure as representing intangible drilling costs, when in fact such figure was substantially erroneous. In both cases, such errors were not obvious on their face, and there was nothing else in petitioners' return which would have made it apparent that they were errors. We accordingly find petitioners' argument on this point to be without merit.

(2) Petitioners next argue that respondent's adjustments giving rise to the instant notice of deficiency were outside the special limitations in the consent which petitioners signed, in that, say petitioners,

such Special Consent was limited, by agreement with respondent, to a deficiency assessment resulting from, or arising out of, certain adjustments to the return of Envirogas Drilling Programs. No such adjustment having

---

[7]As in effect for the year 1978, sec. 6213(f)(2) provided as follows:

(2) MATHEMATICAL OR CLERICAL ERROR.—The term "mathematical or clerical error" means—
    (A) an error in addition, subtraction, multiplication or division shown on any return,
    (B) an incorrect use of any table provided by the Internal Revenue Service with respect to any return if such incorrect use is apparent from the existence of other information on the return,
    (C) an entry on a return of an item which is inconsistent with another entry of the same or another item on such return,
    (D) an omission of information which is required to be supplied on the return to substantiate an entry on the return, and
    (E) an entry on a return of a deduction or credit in an amount which exceeds a statutory limit imposed by subtitle A or B, or chapter 41, 42, 43, or 44, if such limit is expressed—
        (i) as a specified monetary amount, or
        (ii) as a percentage, ratio, or fraction, and if the items entering into the application of such limit appear on such return.

been made to the return of Envirogas Drilling Programs affecting petitioners' return, the proposed deficiency is time-barred.

In making this argument, it is apparent that petitioners are concentrating their attention upon that portion of the special limitations in the consent which petitioners signed (quoted in their entirety in our findings of fact, *supra*) which states:

The amount of any deficiency assessment is to be limited to that resulting from any adjustments to * * * (4) the return of the aforementioned entity [Envirogas Drilling Programs] which also affects your return * * *

Petitioners ignore, however, that portion of the special limitation which reads:

The amount of any deficiency assessment is to be limited to that resulting from any adjustments to * * * (2) your distributive share of any items of income, gain, loss, deduction or credit of, or distribution from the entities known as Envirogas Drilling Programs; * * *

In our view, this last quoted portion of the special limitations of the consent fits the instant situation. Conceding that there was apparently no adjustment to the Envirogas Drilling Programs' return, so far as the figures in question are concerned, subdivision (2) of the Special Consent does not impose any such requirement. What happened here was that petitioners' return preparer erroneously reported in their return two items constituting petitioners' distributive share of tax preference income from the Envirogas Drilling Programs, misinterpreting and misapplying information supplied by Envirogas. Under the clear and unambiguous language of the special limitation which we have quoted, there was no requirement that respondent's adjustment here be made because of corresponding adjustments which he may have made to the returns of Envirogas Drilling Programs.

We accordingly hold that the adjustments made in respondent's statutory notice herein were clearly within the terms of the Special Consent executed by petitioners extending the statute of limitations, and that respondent's statutory notice was therefore timely.

*Decision will be entered under Rule 155.*