FRANK G. and VERNA M. BURNETT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Burnett v. Commissioner
Docket No. 1663-83.
United States Tax Court
T.C. Memo 1985-620; 1985 Tax Ct. Memo LEXIS 9; 51 T.C.M. (CCH) 147; T.C.M. (RIA) 85620; December 23, 1985. *9 Held: Petitioners' horse farm was not operated for profit for purposes of sections 212 and 183. Frank G. Burnett, pro se. Danny M. Carr, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the years and in the amounts as follows: Taxable Year
Deficiency
1974
$79.10
1975
1,055.37
1976
1,027.64
1977
1,072.71
1978
2,368.63
1979
9,850.25
After concessions, the sole issue for decision is whether or not petitioners are entitled to deduct farm expenses from Bella Mia Ranch (the Ranch) a horse farm operated by petitioners during each of the years in issue. Respondent contends that these losses were not incurred in a transaction entered into for profit [1] *10 *11 for purposes of sections 212 and 183. [2] For convenience, our Findings of Fact and Opinion are combined. Some of the facts have been stipulated and they are so found. Petitioners were legal residents of the State of Michigan when their petition was filed in this case. Petitioners are husband and wife and file their tax returns on a calendar-year basis using the cash receipts method of accounting. Petitioners were married in 1974. For each of the years except 1978, Frank G. Burnett (Burnett) worked as a salesman and that income was the principal source of livelihood for petitioners. Some time in 1974 petitioners acquired approximately 22 acres of land and decided to go into a farming operation under the name of Bella Mia Ranch. Burnett contends *12 that it was a joint venture with Mrs. Burnett, although no partnership returns were ever filed by petitioners. Instead, the income and expenses of the Ranch were reported on a separate statement attached to each tax return and the income or loss was reported as "farm income or (loss)" on the appropriate page of the Form 1040 but none of the tax returns includes a Schedule F as required. In 1977 and again in 1979 petitioners filed a Form 5213, making the section 183(e) election. [3] *13 The tax returns, various other documents, and Burnett described the business of the Ranch as the breeding, training, showing, and boarding of horses. In fact, its sole activity during these years was the feeding, care, and training of one to three horses and the training of several of the children of one or the other of petitioners for entry in 4-H horse shows. The Ranch was started in 1974 with two horses, one of which--a registered quarter horse--had been purchased some years previously by Mrs. Burnett as a foal and raised, trained, *14 and extensively ridden by one or more of her daughters by a prior marriage. It was allegedly purchased from a daughter when she went off to college in 1974. There is no evidence, however, as to how the daughter acquired title from Mrs. Burnett or whether title was transferred from the daughter in 1974 or the purchase price was, in fact, paid to the daughter. No bill of sale was offered in evidence and we assume none was executed. The purported purchase price of $1,300 was fixed by Mrs. Burnett allegedly on the basis of her general knowledge of the value of horses of this type trained for 4-H shows. [4] *15 On this record petitioners have failed to establish any purchase in 1974 of the registered quarter horse for $1,300. A thoroughbred pony was apparently acquired in 1977, the year in which the unregistered quarter horse acquired in 1974 was sold, and during the years 1978 and 1979 only the registered horse and the pony were "owned" by the Ranch. Mrs. Burnett lived on a farm as a child, learning to ride horseback without formal training. In the early 1960's she and her husband acquired one or more horses which were used to train her children to ride. A part of this activity consisted of the children learning to show horses in Michigan 4-H horse shows which were in some fashion sponsored by or affiliated with an extension service operated by Michigan State University. This institution from time to time held various training courses, seminars, and demonstrations for children interested in this type of 4-H activity and for parents of the children, providing that no parent could participate in such activities if the parent was in the business of raising, showing, breeding, or training horses for third persons for compensation. Mrs. Burnett and her children actively participated in these activities both prior to 1974 and during some or all of the years before the Court with no apparent change in any of the activities except that in 1974 petitioners decided, according to their testimony, that this activity for and with their children would be turned into a profit-making activity under the name *16 of Bella Mia Ranch. We find that Mrs. Burnett provided whatever expertise in management and direction the activity had and her intent and purpose was simply the purchase of horses for resale, the training of those horses for 4-H shows, and thereafter the sale of trained horses for a profit. No breeding activity was ever undertaken or intended to be undertaken by the Ranch and no horses were ever boarded for third persons. In fact, as Mrs. Burnett emphasized, no horse activity could be undertaken by her for compensation by reason of the 4-H rules. The only horse sold during the period was the quarter horse purchased in 1974. During the years 1974 through 1978, it is not clear how or where the horses were sheltered when shelter was necessary although the returns for 1974, 1975, and 1976 show an expense for barn rental. In 1979, a barn was constructed allegedly by the Ranch, although no depreciation on the barn was claimed on that return. A portion of the barn was used to stable the horse and pony and a portion allegedly rented to Rustic Builders, Inc. During the years 1975 through 1979 depreciation was claimed by the Ranch on a tractor, horse trailer, hayrake, saddles, and similar *17 items. Depreciation was also claimed on a pick-up truck in 1975 and 1976 but in 1977 the pick-up truck was apparently transferred to the account of Rustic Builders, Inc. In years subsequent to those before the Court, one of Mrs. Burnett's daughters by her previous marriage, riding a registered pony apparently owned by the Ranch, won a number of gold medals in a Michigan State University 4-H show. That pony was advertised for sale in 1982. In 1983, the Ranch ceased operation. In 1974 Burnett knew nothing about horses but assisted to some extent during the years in training and exercising the horses and performed other chores on the Ranch. Burnett testified that the rental of a portion of the barn attributed to the Ranch to Rustic Builders, Inc. was required to house a bulldozer, which, if not housed on the Ranch, would have been required to be transported by a large flatbed truck to another storage area. However, the schedule attached to petitioners' 1979 tax return reflecting the Rustic Builders, Inc. business does not show depreciation on a bulldozer. Rental was allegedly fixed at a per square foot rate, based on advertised rentals in local newspapers. We have serious doubt *18 that the rental was reasonable or justified for any business purpose of Rustic Builders, Inc. in the year 1979. Petitioners have certainly not established these facts. However, respondent did not raise this issue; rather respondent contended during the trial that the rental income was not a legitimate activity of the Ranch but was a separate activity. That issue was not mentioned on brief and, thus, is deemed to have been abandoned. Therefore, we have no choice but to find that petitioners have established the applicability of the presumption described in section 183(d). However, this presumption does not effect the ultimate burden of proof; it merely shifts the burden of going forward with the evidence. See the concurring opinion of Judge Tannenwald in Llorente v. Commissioner,74 T.C. 260, 272 (1980), affd. in part and revd. in part on another issue, 649 F.2d 152 (2d Cir. 1981); see also Adler v. Commissioner,85 T.C. 535 (1985). Since there is ample evidence in this case, the section 183(d) presumption is of no consequence. Respondent's regulations (section 1.183-2(b), Income Tax Regs.) set forth nine factors which can be taken into account in determining whether or not an *19 activity is engaged in for profit. The ultimate resolution of the issue does not depend on any particular factor or combination of factors, but on all the facts and circumstances of the case. Engdahl v. Commissioner,72 T.C. 659, 666 (1979); Allen v. Commissioner,72 T.C. 28, 34 (1979). The facts and circumstances must indicate that the taxpayer entered into the activity with the "actual and honest objective of making a profit." Dreicer v. Commissioner,78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Respondent's nine factors do not necessarily apply in every case, and need not be discussed where that will serve no useful purpose. Whatever horsemanship expertise petitioners collectively had during the years before the Court resided largely in Mrs. Burnett. We, therefore, must give more credence to her testimony as to the Ranch activity then to that of Burnett. The maximum training period required for an untrained horse is 2 years and serious training cannot start until a horse is 2 to 3 years old. A partially trained horse should be trainable in less time. Therefore, the 6-year period before the Court was an ample period for petitioners to have *20 acquired, trained, and resold a number of horses if that had been their real objective. Mrs. Burnett had practically constant access to horses and horse owners and certainly could have acquired unlimited numbers of untrained or partially trained horses. By the same token she was constantly in touch with prospective purchasers of such horses, that is, parents of children interested in 4-H horse activities. In point of fact, only one horse was acquired and resold during the period and that horse was resold at a small loss. The other horse owned by the Ranch during the entire period was the horse allegedly purchased from one of Mrs. Burnett's daughters which horse was not sold until 1983 when petitioners went out of the ranch activity. In 1977, petitioners apparently acquired a pony, which pony was still owned during all of 1979. There is no explanation of the failure to sell the registered quarter horse which was presumably well trained in 1974 except the inescapable one which is that Mrs. Burnett did not desire to part with the horse she had raised and trained, at least as long as any of her children or Burnett's children were interested in riding and participating in 4-H activities. *21 In determining profit objective, we must give more weight to objective evidence than to the subjective testimony of the petitioners. Siegal v. Commissioner,78 T.C. 659, 699 (1982); Engdahl v. Commissioner,supra. What they did is far more persuasive than what they say. Not only is there no evidence of any business activity of the Ranch, but there is overwhelming evidence that its activity was solely the personal, family-oriented, out-of-doors 4-H horse program for the benefit of several of petitioners' children. The attempt to clothe those activities with a business purpose in order to obtain tax deductions is an anachronism. Mrs. Burnett could not conduct the Ranch as a business until the children had grown out of 4-H activities and, as we view the evidence, she did not carry on the business of buying, training, and reselling horses during these years. We note a further inconsistency in the Burnett story. For the Ranch to be recognized as a profit-making activity petitioners' activity must be profit oriented. However, in fact, the Ranch activity, as illuminated by the testimony, was geared to 4-H activity. While sale (and presumably purchase) of animals central to a 4-H program *22 is permissible, the program involving the animal must be that of the child, not the parents. Parents are expected to assist, fund, and support their child's project but that project can hardly qualify as a business activity of the parents. We cannot fail in this context to attribute significance to the fact that the marriage of Mrs. Burnett to Burnett allegedly converted a very wholesome parent-child 4-H series of activities into a purported business, obviously so that respondent would share in the cost. Petitioners' Bella Mia Ranch was simply a personal family-oriented recreational series of activities which ceased when the children were grown. It was not, and could not be, a business of any sort. Losses are, therefore, deductible only to the extent allowed by section 183(b). Decision will be entered under Rule 155.
Footnotes
1. Petitioners' income tax returns for the years 1977, 1978, and 1979 claim losses from the business of a separate corporation described on the return as "Rustic Builders Inc.," which petitioners apparently elected under section 1362 of the Internal Revenue Code to treat as a Sub-S corporation. In 1979, petitioners' tax return shows a deduction by the Sub-S corporation of $4,000 as "warehouse expense" and farm income of $4,000, a result of a purported rental of space in the barn considered by petitioners part of the Ranch to the Sub-S corporation. In that year, the statutory notice disallows the expenses of the Ranch but leaves the $4,000 in income and further disallows as expenses of Rustic Builders, Inc. the warehouse expense as well as some depreciation. The parties stipulated that these expense items of Rustic Builders were "improperly disallowed" by respondent in the statutory notice. Petitioners' contend that the stipulation effectively precludes respondent from contending in this case that the $4,000 is not entitled to be treated as income of the Ranch. Respondent contends that this concession was necessary to avoid effectively taxing the $4,000 twice, once by including it in petitioners' income and then by disallowing it as an expense of the Sub-S corporation. Although the stipulation in this respect is inartfully worded, we agree with respondent that the statutory notice does not treat these items consistently and, hence, that the stipulation was appropriate and does not preclude respondent from declining to treat the $4,000 as Ranch income in the year 1979. The importance of this point is that the $4,000 of income in 1979, if properly claimed by the Ranch, results in a nominal profit of the business for that year, and petitioners contend also for the year 1980, which brings into play the presumption of section 183(d) by reason of two profitable years out of seven. 2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
3. On the basis of that election, a determination as to whether or not there were two profit years in a group of seven consecutive years, so as to place the burden of proof as to profit motive on respondent, should be made as of the close of the seventh of the consecutive taxable years. In this case, the statutory notice was issued with respect to the first six of a consecutive 7-year period. The seventh year, 1980, is not before the Court. In order to avoid any prejudice to petitioners, for the purposes of this case only, we will presume that in the year 1980 petitioners realized from the Ranch gross income in excess of deductions properly attributable to that activity so that for purposes of the application of section 183 the year 1980 would be deemed to be a profit year. Petitioners contend that for purposes of section 183 the activity need generate only gross income, not gross income in excess of deductions attributable to the activity. Thus, petitioners contend that the period 1974 through 1979 contains two profit years. Petitioners are incorrect in this interpretation of section 183. Cf. section 1.183-1(c)(1), Income Tax Regs.↩ Based on income tax returns for the 6 years before the Court, petitioners would show a profit only in the year 1979. Whether or not the year 1979 should be treated as a profit year is one of the issues before the Court.
4. We note in passing that the purchase price of the two horses was deducted as an expense of the Ranch on the 1974 tax return. On the 1977 tax return depreciation was claimed on the registered quarter horse and a loss of $251.00 claimed on the sale of the other quarter horse.