RONALD H. AND ISABELLE DONEFF, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Doneff v. Commissioner
Docket No. 12496-89
United States Tax Court
T.C. Memo 1991-253; 1991 Tax Ct. Memo LEXIS 296; 61 T.C.M. (CCH) 2822; T.C.M. (RIA) 91253; June 5, 1991, Filed *296 Decision will be entered for the respondent. James L. Stan and Herbert K. Douglas, for the petitioners. James R. McCann, for the respondent. HAMBLEN, Judge. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in Ronald H. Doneff's (hereinafter petitioner) and Isabelle Doneff's (together hereinafter referred to as petitioners) Federal income tax for the taxable years 1981 and 1984 in the amounts of $ 22,714.39 and $ 10,745.11, respectively. The issues presented are: (1) Whether petitioners' consent to extend the statute of limitations, executed by their agent, was valid; (2) whether petitioners are entitled to a bad debt business deduction under section 166; [1] (3) alternatively, whether petitioners are entitled to a deduction under section 165(c)(1) for a loss incurred in a trade or business; (4) alternatively, whether petitioners are entitled to a deduction under section 165(c)(2) for a loss incurred in any transaction entered into for profit; (5) alternatively, whether petitioners are entitled to a deduction under section 165(c)(3) for a loss of property arising from theft; (6) alternatively, whether petitioners are entitled *297 to a deduction under section 212 for expenses arising from the production of income; and (7) alternatively, whether petitioners are entitled to a deduction under section 1244 for a loss on small business stock. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided at 1270 W. 4th Street, Hobart, Indiana, at the time the petition in this case was filed. Petitioners timely filed joint Federal individual income tax returns (Forms 1040) for their taxable years 1981, 1982, 1983, and 1984. Petitioners executed Form 2848 appointing Nick Thomas, CPA, (hereinafter Mr. Thomas) as their attorney-in-fact for the taxable years 1981 through 1986 on September 9, 1987. *298 The power of attorney authorized Mr. Thomas to "receive confidential information and to perform any and all acts that the principal(s) can perform." On November 6, 1987, petitioners executed Form 872 extending the period of limitations in which to assess tax for the period ended December 31, 1984, until December 31, 1988. On October 19, 1988, Mr. Thomas, designated in petitioners' above power of attorney, executed Form 872 on behalf of petitioners, consenting to extend the period of limitations for the period ended December 31, 1984, until December 31, 1989. Petitioners executed Form 2848 appointing James L. Stan as an attorney-in-fact for the taxable year 1984 on December 31, 1988. The Form 2848 appointing Mr. Stan did not revoke the power of attorney of Mr. Thomas. In 1980, petitioners' son, Gregory Doneff (hereinafter Greg), was an unemployed twenty-five year old living in Palm Beach, Florida. During 1980, Greg met John Wesley Moore (hereinafter Moore) at a retail men's clothing shop named "John Wesley Moore" (hereinafter the Store), owned by John Wesley, Inc. (sometimes hereinafter referred to as the corporation). Greg began working at the Store and after a short period *299 was made manager. He was active in the management and day-to-day operations of the Store. During the period at issue, the Store was in poor financial condition. For the fiscal year ending August 31, 1981, the Store cleared only $ 2,047 in profits. In 1981, Greg loaned $ 10,000 to John Wesley, Inc., and $ 65,000 jointly to John Wesley, Inc., and Moore. These loans were evidenced by promissory notes executed by Moore, as president of John Wesley, Inc., and Moore, individually. Greg thought that, in exchange for his loans totaling $ 75,000, he would receive an ownership interest in the entity running the Store. At a special meeting of the officers, directors, and shareholders of John Wesley, Inc., the corporation and Greg agreed that Greg would exchange his two notes evidencing the $ 75,000 loans for an equivalent amount of stock in the corporation. The precise number of shares was to be determined based upon corporate financial statements which had not been prepared at that time and were to be issued at a later date. Further, Moore told Greg that the shares would have to be repurchased by the corporation from three shareholders before they could be transferred to Greg. Therefore, *300 the exact number of shares involved in the exchange was undetermined at the time of the agreement. Greg was elected vice president of John Wesley, Inc., at a special meeting of its board of directors, officers, and shareholders on December 7, 1981. Greg was also appointed to be an additional director of the corporation at that meeting. In 1982, the Store needed cash in order to continue in business. Greg and Moore contacted petitioner hoping to obtain funds that could be used in the operation and expansion of the Store. Greg asked petitioners if there was any way they could put money into the corporation. Petitioner did not want to invest in the corporation. Petitioner had reviewed some of the financial statements and paperwork from the Store. He knew that the Store was not handling money in an efficient way, had a negative net worth, was in financial distress, probably would not be able to stay afloat, and did not warrant an investment. Petitioners nevertheless agreed to advance funds to the corporation. Petitioners' motivation in making the loans was to protect their son's equity interest in the corporation. The loans were predicated on the assumption that petitioners' *301 son would receive the stock once the company was better organized and running more efficiently. Petitioner has never been involved in entrepreneurial endeavors and has practiced medicine all his professional life. Petitioner was not engaged in the business of lending money as of the time he made the loans. The only business acumen he had was that of someone who is in a profession, hoping to find a separate nonbusiness-related sideline. However, at the request of their son, petitioners agreed to make loans to the corporation. Petitioners wrote several checks for large sums of money payable to their son, Greg, during 1981 and 1982. These checks included check number 116, dated November 25, 1981, in the amount of $ 50,000; check number 229, dated September 16, 1982, in the amount of $ 20,000; [2] and check number 5242, dated July 18, 1981, in the amount of $ 10,000. These funds, advanced by petitioners, were loaned by their son to John Wesley, Inc. In addition, petitioners wrote check number 5249, dated August 1, 1981, in the amount of $ 50,000, payable to the order of Moore. Check number 5249 did, however, include a notation, "G.S.D", for Gregory S. Doneff. *302 Petitioner drew up two separate promissory notes to evidence the loans made by him to his son and Moore. Petitioner made the notes payable from John Wesley Moore of Palm Beach, a figment partnership, because in his mind his son and Moore were a partnership. On January 3, 1983, Moore executed and delivered a promissory note to petitioners in the amount of $ 100,000 with a stated interest rate of 13.5 percent. Petitioners also received a promissory note, dated January 3, 1983, in the amount of $ 30,000 with a stated interest rate of 12.5 percent. Moore and Greg, purportedly as partners of John Wesley Moore of Palm Beach, signed the promissory note for $ 100,000 in favor of Ronald H. Doneff and the other promissory note for $ 30,000 in favor of his wife Isabelle Doneff. Both Moore and Greg were coguarantors and jointly and severally liable on each of the two promissory notes. As of January 3, 1983, John Wesley Moore of Palm Beach did not exist. In fact, the purported partnership John Wesley Moore of Palm Beach has never existed. At the time of the loan, it was the intention of the parties that the money be lent to the party or entity owning and operating the Store. It was the *303 further intention of all parties that the promise to repay the money loaned, as evidenced by the notes, would be backed by the assets, financial standing, and credit worthiness of the party or entity owning and operating the Store. The Store was, in fact, owned and operated by John Wesley, Inc., rather than the purported partnership John Wesley Moore of Palm Beach. The funds loaned by petitioners were in fact received and used by the corporation. These funds were used by the corporation to expand the Store, to pay off prior debts, to acquire new merchandise, and for general operating expenses and salaries. The funds also enabled the corporation to pay off outstanding loans, realize a substantial savings on the cost of these loans, and reach a more stable financial situation. Petitioner agreed that the funds forwarded to the corporation were used for their intended purposes. Petitioner admits that the loans forwarded to the corporation allowed the corporation to stay afloat and meet its payables as they were becoming due. Three payments, each in the amount of $ 3,304.58, were made on the promissory notes. All three checks were paid to the order of petitioner and signed by his *304 son, Greg. Neither John Wesley, Inc., nor the purported partnership John Wesley Moore of Palm Beach paid the installment due on June 3, 1983, and petitioners elected to accelerate payment of the balance. Petitioners sent a letter to John Wesley Moore of Palm Beach on June 29, 1983, advising Moore that he was in default of payments on the promissory notes. Petitioners never attempted to collect on the promissory notes from their son who was a co-guarantor. John Wesley, Inc., doing business as John Wesley Moore, filed a petition in bankruptcy in the U.S. Bankruptcy Court for the Southern District of Florida on April 10, 1984. The list of creditors attached to the bankruptcy petition confirms that the corporation had significant debts which it was unable to pay. In an amendment to the list of creditors, the debtor disputed the amount of debt owed to petitioners and disputed any debt that it owed to petitioner's son. Moore, individually, filed a petition in bankruptcy in the U.S. Bankruptcy Court for the Southern District of Florida on April 17, 1984. In an amendment to the list of creditors in his individual case, Moore disputed the amount owed to petitioners and disputed the *305 debt owed to petitioner's son. Petitioners voluntarily agreed to cease pursuing any complaint in the Bankruptcy Court to block the discharge of Mr. Moore on the basis that the loans were fraudulently obtained. On April 18, 1985, Moore was discharged of debts nunc pro tunc as of January 22, 1985, by the U.S. Bankruptcy Court of the Southern District of Florida. In a letter to the president of the Florida State Bar Association on October 3, 1983, petitioner alleged that his son was defrauded and unjustly uprooted from his chosen livelihood and area of residence. No mention is made in the letter that petitioner himself was defrauded. Based on their losses on the promissory notes in question, petitioners took a worthless business loan deduction in the amount of $ 151,488.89 on their 1984 Federal income tax return. On May 6, 1985, petitioners also filed a joint application for tentative refund (Form 1045) for Federal net operating losses of $ 105,767.82 generated in the taxable year 1984, with a carryback first to the taxable year 1981, and with the remainder to the taxable years 1982 and 1983, respectively. Respondent sent a notice of deficiency to petitioners, dated March 7, 1989, *306 determining deficiencies of $ 22,714.39 and $ 10,745.11 for the taxable years 1981 and 1984, respectively. Petitioners timely filed their petition to this Court contesting respondent's determined deficiencies for the taxable years 1981 and 1984, on June 7, 1989. OPINION Respondent determined that petitioners were not entitled to their claimed business bad debt deduction in the amount of $ 151,488.89 for the taxable year 1984 and consequential net operating losses of $ 105,767.82 for the taxable year 1984 and the taxable year 1981 via the carryback provisions of the Internal Revenue Code. Petitioners contend that the consent to extend the statute of limitations to December 31, 1989, executed by Nick Thomas, is invalid. Petitioners argue that, because Mr. Thomas did not have "specific authority" to execute the consent on behalf of petitioners, the consent is invalid. Based upon their assertion that the consent is invalid, petitioners contend that respondent's deficiency determination is barred since it came after the expiration of the three-year period of limitations in which respondent could have assessed the tax at issue. If the Court finds that the consent was valid, petitioners *307 argue that they are entitled to report the total amount in controversy as a business bad debt deduction under section 166(a). Alternatively, petitioners claim that they are entitled to report the amount in controversy as a loss incurred in a trade or business under section 165(c)(1), or a loss incurred in any transaction entered into for profit under section 165(c)(2), or a loss of property arising from theft under section 165(c)(3), or an expense incurred in the production of income under section 212, or a loss on small business stock under section 1244. Respondent determined that the consent, executed by Mr. Thomas on behalf of petitioners, was valid. In doing so, respondent asserts that the "specific authority" needed for Mr. Thomas to execute the consent on behalf of petitioners was granted by petitioners when they executed a power of attorney in favor of Mr. Thomas. Respondent contends that petitioners have not substantiated their claim that the amount at issue herein should be treated as a business bad debt deduction. Instead, respondent, in the notice of deficiency, determined that petitioners were entitled to a nonbusiness bad debt deduction under section 166(d)(1), subject *308 to tax treatment as a short-term capital loss. Respondent further asserts that petitioners have failed to meet their burden of proof in substantiating their claim for deductions under the various cited Code sections. The Notice of Deficiency
Petitioners contend that respondent's notice of deficiency is barred by the three-year period of limitations in which respondent can assess tax. In support of their position, petitioners argue that the consent to extend the time to assess tax (Form 872) executed by their agent, Mr. Thomas, on October 18, 1988, is invalid because they never specifically authorized Mr. Thomas to sign the consent on their behalf. Respondent asserts that the consent in question was properly executed by petitioners' agent, Mr. Thomas. Respondent points to the power of attorney (Form 2848), executed by petitioners, which authorizes Mr. Thomas "to receive confidential information and to perform any and all acts that the principal(s) can perform with respect to the above specified tax matters (excluding the power to receive refund checks, and the power to sign the return (see regulations section 1.6012-1(a)(5)), Returns made by agents), unless specifically *309 granted below)." In executing the Form 2848 power of attorney, petitioners granted Mr. Thomas all powers necessary to act on their behalf except to receive refund checks or to sign returns. Respondent asserts that neither of these two restrictions is at issue in these proceedings. Respondent further points out that the power of attorney covers the taxable years in question. Section 6501(a) declares that, except as otherwise provided, "the amount of any tax imposed * * * shall be assessed within 3 years after the return was filed * * * and no proceeding in court * * * shall be begun after the expiration of such period." The Secretary and the taxpayer may extend this time period upon the written consent of both parties. Sec. 6501(c)(4). The tax may then be assessed at any time prior to the expiration of the agreed-to time period. Further, within the extension period, the extension itself can again be extended by subsequent written agreement of the parties. Sec. 6501(c)(4). The bar to the period of limitations in which to assess tax is an affirmative defense and the party raising it must specifically plead it and carry the burden of proof with respect thereto. Adler v. Commissioner, 85 T.C. 535, 540 (1985); *310 Rule 142(a). Petitioners make a prima facie case by proving the filing date of the return, Miami Purchasing Service Corp. v. Commissioner, 76 T.C. 818, 823 (1981); Robinson v. Commissioner, 57 T.C. 735, 737 (1972), and showing that the notice of deficiency was issued beyond the normally applicable limitations period. Adler v. Commissioner, 85 T.C. at 540. The burden of going forward then shifts to respondent to introduce evidence showing that the bar of the period of limitations is inapplicable. Miami Purchasing Service Corp. v. Commissioner, 76 T.C. at 823. Pursuant to section 6501(c)(4), respondent can meet his burden by showing that the statutory notice of deficiency was mailed prior to the expiration of the agreed limitations period, pursuant to a consent which is valid on its face. Adler v. Commissioner, 85 T.C. at 541. A consent is valid on its face if it identifies the taxpayers, bears their signature, identifies the year, and was dated prior to the expiration of the then existing limitation period.[3] A consent is valid on its face even if the underlying documentation *311 that relates to it, such as a power of attorney (Form 2848), is invalid.[4] Once the consent is determined to be valid on its face, the burden of going forward then shifts back to petitioners to show that the underlying documents are invalid or the alleged exception is not applicable. Adler v. Commissioner, 85 T.C. at 540. The ultimate burden of proof always rests with the party raising the issue of the period of limitations as an affirmative defense. Adler v. Commissioner, 85 T.C. at 540. In the case before us, respondent produced an initial consent to extend the period of limitations in which to assess tax to December 31, 1988, that appears valid on its face. Next, respondent meets his burden of going forward by producing a second consent to extend the period *312 of limitations in which to assess tax to December 31, 1989, executed within the first extension period. The second consent is valid on its face as it was signed by petitioners' duly authorized attorney-in-fact, Mr. Thomas. The ultimate burden of proof rests with petitioners. Petitioners simply have not met this ultimate burden as the consents are valid on their face, and the burden is upon petitioners to bring in evidence of the invalidity of the consents. Petitioners could have very easily called Mr. Thomas to testify at trial as to the actual scope of his authority with respect to petitioners' 1981 through 1986 taxable years. The failure of a party to introduce evidence within his possession which, if true, would be favorable to him, gives rise to a presumption that if produced it would be unfavorable. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). This principle is particularly pertinent when the party failing to produce the evidence has the burden of proof or the other party to the proceeding has established a prima facie case. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. at 1165. *313 Petitioners did not call Mr. Thomas and gave this Court no reasons why they did not do so. This raises the presumption that, had Mr. Thomas been called, his testimony would have been unfavorable to petitioners' position. Instead of calling Mr. Thomas, petitioners attempt to argue that they did not grant Mr. Thomas specific authority to execute the consent to extend time on their behalf. This argument fails to overcome the patent provisions of the documents and the presumption that Mr. Thomas would have testified contrary to petitioners' position. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. at 1165. [5] Consequently, petitioners have not carried their ultimate burden of proof. See Adler v. Commissioner, 85 T.C. at 540. We find that the two consents at issue are valid and that respondent issued the notice of deficiency within the extended period in which respondent must assess tax. Bad Debt *314 Business Deduction
Petitioners claim that the losses they incurred on the loans made to their son and Moore qualify as a business bad debt deduction under section 166(a)(1). Respondent determined that the losses were deductible as a nonbusiness bad debt deduction under section 166(d)(1). Respondent further contends that petitioners conceded this issue in the opening statement of petitioners' counsel. Before addressing the propriety of petitioner's claimed section 166 business bad debt deduction, we must first consider respondent's contention that petitioners' counsel conceded this and other issues in his opening statement. In making this assertion, respondent relies on the opening statement of petitioners' counsel, in which he stated: Your Honor, I simply want to say that, while a lot of issues are contained in the contentions, essentially we're taking the position that this write-off is a result of fraud. And, we are going to be concentrating on that. And, I think that will simplify the trial of this case. So, I don't think that we have to get into a lot of these issues that are in there. And, I think -- I'm reluctant to concede much -- but, I think the Respondent is *315 correct in his contentions in a lot of the -- as far as the defense of this thing, and I think that, basically, we're on a fraud case. Period. We find that these statements do not rise to the level of a concession on the part of petitioners to all issues other than the issue of fraud. We interpret these statements as petitioners' counsel's way of directing the Court's attention to the issues he views most favorable to his clients. Respondent was ill-advised to assume away several issues that were raised in the petition, mentioned in petitioners' brief, and maintained in petitioners' reply brief. It would have been more appropriate for respondent to have tested this matter by motion at trial, or thereafter, prior to submission of briefs. It is the function of this Court, not respondent, to determine if a concession has been made. However, notwithstanding respondent's briefing tactics, deductions are a matter of legislative grace, and petitioners bear the burden of proof to show that they are entitled to any deductions greater than those allowed by respondent. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). This burden of proof includes establishing *316 both the right to and the amount of the deduction. Commissioner v. National Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 40 L. Ed. 2d 717, 94 S. Ct. 2129 (1974); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 78 L. Ed. 1348, 54 S. Ct. 788 (1934). Section 166(a) provides that a deduction shall be allowed for any debt which becomes worthless within the taxable year. Section 166(d)(1)(A) restricts the benefits of section 166(a) for nonbusiness bad debts. In this respect, section 166(d)(1)(B) allows a deduction for nonbusiness bad debts but treats nonbusiness bad debts as a short term capital loss. Nonbusiness bad debts is defined in section 166(d)(2) as "a debt other than - (A) a debt created or acquired * * * in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." The question whether a debt is a business debt or a nonbusiness debt is a question of fact in each particular case. Sec. 1.166-5(b), Income Tax Regs.Section 166(d), by defining a nonbusiness debt, establishes that a business debt is a debt created or acquired in connection with the trade or business of the taxpayer or a debt the loss *317 from the worthlessness of which is incurred in the taxpayer's trade or business. In order for a debt to be considered a business debt, it must have a proximate relation to the taxpayer's trade or business. United States v. Generes, 405 U.S. 93, 31 L. Ed. 2d 62, 92 S. Ct. 827 (1972). In determining whether a proximate relationship exists, the proper measure is the taxpayer's dominant motivation for incurring the debt. A significant motivation in not sufficient. United States v. Generes, 405 U.S. at 103. In the case at hand, petitioners argue that the debt was incurred in petitioners' trade or business. The facts do not bear this out. The facts indicate that petitioner was a physician, not a person in the trade or business of making business loans, who loaned money to his son's venture, knowing that the investment was ill-advised. Petitioner knew the Store was not handling money efficiently. Petitioner knew that the Store was in financial distress and would probably not be able to stay afloat. The facts further indicate that petitioner's dominant motivation for making the loans was to protect his son's interests. Petitioners have presented scant evidence to support *318 their contention that the loans in question were made by petitioner within his trade or business. We find that petitioners have failed to meet their burden of proof with regard to their claimed business bad debt deduction under section 166(a). Therefore, we find that petitioners are not entitled to section 166(a) business bad debt treatment for the loans at issue. Alternate Methods of Deductibility
Petitioners claim various alternate methods to deduct their losses on the loans at issue. Petitioners assert that the loans qualify under section 165(c)(1) for a loss incurred in a trade or business, section 165(c)(2) for a loss incurred in any transaction entered into for profit, section 165(c)(3) for a loss of property arising from theft, section 212 for an expense incurred in the production of income, or section 1244 for a loss on a small business stock. Respondent again contends that petitioners have conceded all of the above issues, except the section 165(c)(3) deduction for loss of property arising from theft. Respondent bases his contention on the previously noted excerpt from petitioners' counsel's opening statement, supra. As before, we do not find that these statements *319 rise to the level of a concession. However, petitioners still must carry their burden of proof in establishing their right to and the amount of any claimed deductions in excess of those allowed by respondent. Welch v. Helvering, supra; Rule 142(a). Section 165(c)(1) allows a deduction for individuals for losses incurred in a trade or business. As we have previously found based on the entire record before us, petitioners were not in the trade or business of making business loans. Further, petitioner was engaged in no other business that we know of, based on the record before us, which would in any way relate to the advances in question. Petitioner was a physician who loaned money to his son's venture in hopes of helping his son maintain his interest. Further, petitioners, on brief, produced no credible evidence to support their argument for deductibility under section 165(c)(1). Petitioners have failed to demonstrate their right to the claimed deductions. See Commissioner v. National Alfalfa Dehydrating & Milling Co., supra.Therefore, petitioners fail to meet their burden of proof. Based on the above, we find that petitioners *320 do not meet the requirements that would allow them a deduction under section 165(c)(1). Section 165(c)(2) allows a deduction for individuals for losses incurred in any transaction entered into for profit, regardless of whether the loss was incurred in the taxpayer's trade or business. The facts in the present case demonstrate that petitioners did not enter into the transaction in hopes of making a profit. Petitioners admit that their dominant motivation in making the loans at issue was to protect their son's interests. Petitioner further admits that he knew the Store was not a very good investment and that the Store would probably not be able to continue operations due to its poor money management. We find that petitioners' motive in making the loans was love for their son, not profit. Further, petitioners bring forth no credible evidence to support their theory of deductibility under section 165(c)(2). Instead, petitioners rely on a mere recitation of the Code sections they think might afford them relief. This mere recitation certainly does not provide petitioners' proof. Therefore, petitioners are not entitled to a deduction under section 165(c)(2) for losses incurred in *321 a transaction entered into for profit. Section 212, in pertinent part, allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. Petitioners bring forth no evidence to support their claim that they qualify for a deduction under section 212. Instead, petitioners merely cite section 212, evidently in hopes that it may apply to their situation. We find that it does not. We further find that petitioners have failed to meet their burden of proof with regard to this issue. Therefore, petitioners are not entitled to a deduction under section 212 for the losses they incurred on the promissory notes in question. Section 1244(a) allows an ordinary deduction, subject to the limitations of section 1244(b), for losses on certain kinds of stock, defined in section 1244(c), issued to an individual or a partnership which would otherwise be treated as a loss from the sale or exchange on a capital asset. Petitioners again produced no evidence to support their contention that they qualify for section 1244 treatment. *322 Further, the facts demonstrate that section 1244 is inapplicable to petitioners' situation. Petitioners owned no stock in the venture in which Moore and his son were engaged. Petitioners made loans, evidenced by promissory notes. The record contains no evidence that petitioners held anything other than debt instruments and the record is unclear as to who issued the notes, i.e., Moore, petitioners' son, or some entity in which Moore and petitioners' son were involved. No equity interest, i.e., stock ownership, as contemplated by section 1244, exists under the circumstances extant. We, therefore, find that petitioners are not entitled to the deductions for losses on stock as set forth by section 1244. Section 165(c)(3) allows an individual a deduction for a loss that is a result of fire, storm, shipwreck, or other casualty, or from theft. The losses under section 165(c)(3) are allowable notwithstanding the fact that they were not incurred either in the taxpayer's trade or business or in an activity entered into for profit. Petitioners' main argument is that they are entitled to a deduction under section 165(c)(3) for a loss of property arising from theft. Theft is broadly *323 construed and is not limited to larceny, embezzlement, and robbery. Sec. 1.165-8(d), Income Tax Regs. In order to prove a theft occurred, petitioners must establish criminal intent and an illegal act under the law of the jurisdiction where the alleged theft occurred. Johnson v. United States, 291 F.2d 908, 909 (8th Cir. 1961). [6]
We find that the facts in the instant case demonstrate that no theft actually took place. Petitioners loaned money to a business that they knew was in a precarious financial condition at the time of the loan. Petitioners admit that the funds were used exactly as they had intended them to be used. No evidence was brought forward that Moore secreted these funds to himself, away from their intended use. Petitioners argue that they were defrauded when Moore represented their son, Greg, to be his partner. The facts demonstrate that Greg had some management interest and some ownership interest *324 in the Store. The exact interest was never set forth. Petitioners knew that their son's ownership interest was unsettled at best. This knowledge was corroborated in petitioner's letter to Moore, on behalf of Greg, asking that Greg receive stock for his efforts rather than for an additional contribution, as previously agreed. Further, petitioners had the opportunity to oppose Moore's discharge in his bankruptcy proceedings specifically on the grounds of fraud. They chose not to. Another indication to the Court that no theft occurred was petitioner's letter to the Florida State Bar Association on October 3, 1983. In that letter, petitioner submitted that his son was defrauded by Moore. However, petitioner never contended that he or his wife were defrauded by Moore. Finally, petitioners received three payments, each in the amount of $ 3,304.58, on the promissory notes. We find that these payments indicate there was no intent on behalf of Moore and Greg to defraud petitioners. Based on all of the above facts, we find that petitioners have not carried their burden of proof in establishing their right to a deduction under section 165(c)(3). Consequently, petitioners are not entitled *325 to a deduction for theft under section 165(c)(3). CONCLUSION We find that petitioners have not met their burden of proof in establishing their right to deductions under any of the Code sections they listed. Further, we find that the entire record herein supports respondent's position that petitioners are entitled to a nonbusiness bad debt deduction under section 166(d)(1), subject to treatment as such. We have reviewed petitioners' other arguments and find them wholly unpersuasive and without merit. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code of 1954 as amended and in effect for the taxable years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Check number 229 was made payable to: Gregory S. Doneff/John Wesley Moore of Palm Beach.↩
3. Lefebvre v. Commissioner, T.C. Memo 1984-202, affd. per curiam 758 F.2d 1340↩ (9th Cir. 1985).
4. See Griffith v. Commissioner, T.C. Memo 1988-445↩.
5. See also Griffith v. Commissioner, supra↩.
6. See also Huey v. Commissioner, T.C. Memo 1985-348↩.