GERARD SAGER and IRENE SAGER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sager v. Commissioner
Docket No. 43237-86.
United States Tax Court
T.C. Memo 1988-193; 1988 Tax Ct. Memo LEXIS 220; 55 T.C.M. (CCH) 758; T.C.M. (RIA) 88193; May 3, 1988. Emil Sebetic, for the petitioners. Diane Mirabito, for the respondent. POWELL
MEMORANDUM FINDINGS OF FACT AND OPINION POWELL, Special Trial Judge:[1] Respondent determined a deficiency in petitioners' 1979 Federal income tax in *221 the amount of $ 73,287. The deficiency is attributable to respondent's disallowance of both partnerships and Schedule C losses claimed by petitioners on their 1979 return. The partnership loss has been severed from the case before us. The sold issue for decision is whether the consent to extend the statute of limitations pursuant to section 6501(c)(4)[2] was both valid and unrestricted. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein. Petitioners resided in Port Washington, New York, at the time they filed their petitioner. Petitioners timely filed a 1979 Federal income tax return in which they claimed a $ 60,000 loss on their Schedule C (hereinafter *222 "Schedule C loss") for their investment in Gerard A. Sager Productions, a sound recording business (hereinafter "recording business"). The loss was attributable to a depreciation deduction for a master sound recording. By letter dated July 31, 1980, the Internal Revenue Service ("Service") requested petitioners to submit information regarding their 1979 Schedule C loss. Petitioners' response, dated August 11, 1980, explained that this loss represented a depreciation deduction of $ 72,474 that was limited to $ 60,000 by the "at-risk" rule. Prior to their July 31, 1980 letter, the Service had informed petitioners by letter dated June 18, 1980 that their 1978 return was being assigned to Revenue Agent Krystina Goral for examination. [3] In their 1978 return petitioners had claimed a Schedule C loss for the same recording business. After examinging petitioners' 1978 return, Agent Goral sent an Information Document Request to petitioners on June 23, 1980, requesting that petitionrs produce information relating to the nature of their recording business. On January 6, 1982, Agent Goral offered to settle petitioners' 1978 Schedule C (recording business) loss for the amount of cash invested, *223 but would not allow any investment tax credit carryover to 1979. By a letter dated November 4, 1982, [4] the Service requested that petitioners sign a Form 872-A, Special Consent to Extend the Time to Assess Tax (hereinafter "872-A") [5] extending indefinitely the statute of limitations on the assessment and collection of any Federal income tax due from petitioners' 1979 tax return. The transmittal letter accompanying the 872-A made reference to two of petitioners' partnership investments which the Service was examining, but made no reference to petitioners' 1979 Schedule C loss. [6] The letter was not sent by Agent Goral, but rather by a unit os the Service that was examining only petitioners' partnership investments. The 872-A itself contained no reference to any specific items included on petitioners' 1979 return, providing in pertinent part: * * * [THE PARTIES] CONSENT AND AGREE TO THE FOLLOWING: (1) THE AMOUNT OF ANY FEDERAL INCOME TAX DUE ON ANY RETURN[S] MADE BY OR FOR THE ABOVE TAXPAYER[S] * * * [may be assessed upon the happening of certain events]. *224 %Petitioners never requested that any restrictions be placed on the 872-A, and the Service never stated that they would be willing to include any such restrictions. However, petitioner Gerard Sager testified that prior to signing the 872-A his account advised him that it was limited to partnership items only. The 872-A was signed by petitioners on Novemebr 1, 1982, and by the Service's representative on January 17, 1983. Petitioners and respondent had previously executed an unrestricted 872-A for petitioners' 1978 taxable year. [7] The Service's transmittal letters accompanying the 1978 872-A differed from 1979 in that it made no reference to any specific items on petitioners' return. On September 5, 1986, respondent issued a notice of deficiency to petitioners for their 1979 taxable year. The notice of deficiency disallowed one of petitioners' partnership losses and petitioners' $ 60,000 Schedule C loss. Petitioners maintain that it was their belief that the 872-A extended the statute of limitations *225 for their partnership items only. As a result, petitioners argue that the 872-A should be declared invalid for lack of "mutual assent" between the parties. Respondent contends that the 872-A was unambiguous and unrestricted on its face, and, therefore, it extended the statute of limitations for both the partnership losses and the Schedule C loss claimed on petitioners' return. We agree with respondent. OPINION Section 6501(a)[8] provides the general rule that a deficiency must be assessed within three years after the return is filed. The three-year period may, however, be extended by agreement before the expiration of that period as prescribed by section 6501(c)(4). [9]
*226 When the notice of deficiency is issued beyond the applicable statute of limitations the burden of going forward with the evidence to show that an exception to the period of limitations applies rests with the Government. Adler v. Commissioner,85 T.C. 535, 540 (1985). This burden shifts back to the taxpayer when there exists a facially valid consent extending the statute of limitations up to the date of the notice of deficiency. The ultimate burden of proof always remains with the taxpayer. Adler v. Commissioner, supra.
An agreement to extend the statute of limitations for assessment and collection of an income tax is not a contract, but rather a waiver of a defense by the taxpayer. Piarulle v. Commissioner,80 T.C. 1035, 1042 (1983). Contract principles are significant, however, because section 6501(c)(4) requires that the parties reach a written agreement. *227 An agreement under section 6501(c)94) requires mutual assent, but does not require consideration. Piarulle v. Commissioner, supra.The objective manifestation of mutual assent as evidenced by the parties' overt acts determines whether the parties have made an agreement. 1 S. Williston, Contracts, sec. 22 (3d ed. 1957); 1 Restatement, Contracts 2d, sec. 19 (1979). Petitioners and respondent executed the 872-A prior to the expiration of the three-year statute of limitations. [10] Thus, the question presented is whether the executed 872-A was valid, and, if so, whether it applied to petitioner's 1979 Schedule C loss. Petitioners argue that when they signed the 872-A for 1979 they believed that it applied solely to their partnership items and not to their Schedule C loss. In an attempt to prove that their belief was justified, petitioners rely on (1) the transmittal letter accompanying the 872-A and (2) communications with the Service during the course of the Service's investigation. Petitioners place great weight *228 on the Service's transmittal letter that accompanied the 872-A. This letter did refer to petitioners' two partnership investments without making reference to petitioners' Schedule C loss, while the letter accompanying the 872-A for 1978 made no such reference. More important, however, the 872-A executed by petitioners for 1979 (as well as for 1978) was unrestricted and unambiguous on its face, clearly stating petitioners' consent to extend the statute of limitations for "any Federal income tax due". (Emphasis added.) Petitioners never requested that restrictions be placed on the 872-A . Rather, they contend that there was no need for such restrictions because it was their belief that the 872-A was restricted to their partnership items. This Court previously has held that the consent form itself is controlling. In Marx v. Commissioner,13 T.C. 1099, 1105 (1949), the taxpayer tried to make advantage of an error in the Service's letter that accompanied a copy of a previously-executed 872. [11] In holding that the terms of the 872 were controlling, this Court stated: *229 The petitioner is trying to take advantage of the obvious error in this letter, but the Form 872 expressed the true and only agreement of the parties as to the extension of the statutory period for assessment. The petitioner and the Commissioner, by Form 872, agreed that the period of limitations applicable to the petitioner's tax liability for 1943 was extended to June 30, 1948. The notice of deficiency was mailed within that period and the statute of limitations has not run. [Emphasis added 13 T.C. at 1105.] In Tallal v. Commissioner,77 T.C. 1291, 1294 (1981), the taxpayer had signed an 872-R [12] that was unrestricted on its face. The taxpayer maintained that it was invalid because he executed the 872-R on the condition that his former wife also sign it. The 872-R did not contain the signature of the taxpayer's former wife. Consequently, petitioner argued that it was invalid. In holding that the 872-R was valid, this Court stated: The record is clear that there was no duress by the revenue agent that caused Mr. Tallal to sign the consent nor was *230 there any misrepresentation of fact made by the agent to Mr. Tallal. Nothing on the face of the consent states that Mr. Tallal was signing it on the condition that his former wife's signature to the consent be obtained. The consent is a written document. Had Mr. Tallal written on the Form 872-R that his granting of the extension of time for assessment and collection of the tax was conditioned on the signature of his former wife being obtained, we would have a different case, and we are not here deciding such a case. This record does not show that the revenue agent made any commitment to Mr. Tallal to obtain his former wife's signature. Even if he had, his action would not necessarily be binding on the Commissioner. See United States v. Stewart,311 U.S. 60 (1940). Cf. Boulez v. Commissioner,76 T.C. 209, 213-214 (1981). [77 T.C. at 1294.] Lastly, petitioner Gerard Sager testified at length regarding the correspondence he received from the Service for his 1979 tax years, as well as for prior and subsequent tax years. However, any correspondence *231 occurring after the time petitioners signed the 872-A is of little or no relevance, for in construing an instrument we do so based on the circumstances surrounding the parties when the instrument was executed. Constitution Publishing Co. v. Commissioner,22 B.T.A. 426, 428 (1931). After considering such circumstances in the instant case, we find that there is ample evidence that at the time petitioners signed the 872-A (November 1, 1982) they knew that the Service was still investigating their Schedule C loss. For example, on June 23, 1980, Agent Goral requested petitioners to submit records pertaining to their 1978 Schedule C (recording business) loss. While this request did pertain to petitioner's 1978 return, these same underlying documents were applicable to petitioners' 1979 Schedule C item. Additionally, on July 31, 1980, the Service requested that petitioners submit additional information regarding their 1979 Schedule C loss. Within two weeks petitioners supplied the requested information. Finally, on January 6, 1982, only ten months prior to the time petitioners *232 signed the 872-A, Agent Goral offered petitioners a settlement proposal for their 1978 Schedule C loss. The proposal limited this loss to the amount of cash invested by petitioners, and disallowed any investment credit carryover to 1979. At no time did Agent Goral inform petitioners that their 1979 Schedule C loss was going to be allowed. Based on these facts, we find that when petitioners signed the 872-A they were aware that the Service was still examining their Schedule C loss. Accordingly, any assumption by petitioners that their Schedule C loss was not part of the 872-A agreement was erroneous. Petitioners rely on Cary v. Commissioner,48 T.C. 754 (1967), Piarulle v. Commissioner, supra, and Schwotzer v. Commissioner,T.C. Memo. 1986-161. Schwotzer has been vacated by an order from this Court dated July 17, 1986, and Cary and Piraulle are factually distinguishable from the instant case. In both Cary and Piraulle this Court invalidated 872's that were executed by the taxpayer and subsequently altered by the Service's agents without the taxpayer's consent. In the instant case petitioner do not allege, *233 and the facts do not show, that the 872-A signed by petitioners was subsequently altered by respondent. Nor is this a case where "petitioners executed one instrument and respondent seeks to enforce a different instrument against them." Piarulle v. Commissionr, supra at 1044. The end result is that petitioners and respondent signed the same unrestricted 872-A . Based on the foregoing, we find that the 872-A was unrestricted and reflected the agreement between the parties. Accordingly, the notice of deficiency attributable to petitioner's 1979 Schedule C loss was not barred by the statute of limitations. In the alternative, petitioners argue that the Service is estopped from asserting a deficiency attributable to their 1979 Schedule C loss. Respondent objects to this argument, alleging that it was raised for the first time in petitioners' brief. Petitioners, in turn, allege that respondent raised an estoppel argument in their brief, although it was not stated as such. [13]
*234 Rule 39, Tax Court Rules of Practice and Procedure, requires that a party set forth in his pleading any matter constituting an affirmative defense, including estoppel. This Court will not consider issues not raised in the pleadings. See, e.g., Markwardt v. Commissioner,64 T.C. 989, 997 (1975); Estate of Mandels v. Commissioner,64 T.C. 61, 73 (1975). Since neither the petition nor any other pleadings submitted in this case raised the estoppel argument, we find that it is not properly before us at this late date. In any event, without delving into the estoppel elements that are required by this Court, we hold that estoppel is not applicable in this case. [14] Because of concessions Decision will be entered under Rule 155.
Footnotes
1. This case was assigned pursuant to the provisions of section 7456(d) (redesignated as section 7443A by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755) and Rule 180 et seq. ↩
2. All statutory references are to the Internal Reveue Code of 1954, as amended, and as in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise provided. ↩
3. Agent Goral later was assigned to examine petitioners' 1979 returns. ↩
4. Although the letter was dated November 4, 1982, petitioners received it on or about November 1, 1982. ↩
5. Unless noted otherwise, "872-A" refers to the extension for petitioners' 1979 tax return. ↩
6. Petitioners' partnership investments were mentioned in the letter's heading, and were also referred to in the body of the letter. The letter provided, in pertinent part: Gerard A & Irene C Sager 23 Hampton Court Port Washington, NY 11050 SSN: 053-18-XXXX SSN: 053-18-XXXX
RE: ATHENS ASSOCIATES JEFFERSON COLLECTION Dear taxpayer: The above-named entity(s) return is under examination. Certain adjustements may be proposed to the entity(s) return which may affect your federal tax return for the year 1979. We do not expect to receive the results of the entity(s) audit before the expiration of the normal statute of limitations. Generally, a delay in time is the result of the taxpayers exercising their right to appeal the IRS decision. In order to allow time for adequate consideration of your case in conjunction with the audit of the entity(s), we request that you sign the enclosed consent, Form 872A. If you filed a joint return for the year 1979. We do not expect to receive the results of the entity(s) audit before the expiration of the normal statute of limitations. Generally, a delay in time is the result of the taxpayers exercising their right to appeal the IRS decision. In order to allow time for adequate consideration of your case in conjunction with the audit of the entity(s), we request that you sign the enclosed consent, Form 872A. If you filed a joint return for the year involved, have your spouse sign the form also. This form will extend the statute of limitations.↩
7. The 872-A for 1978 was sent to petitioners on October 13, 1981. It was executed by petitioners on October 26, 1981, and by the Service on October 30, 1981. ↩
8. Section 6501(a) provides: General Rule. -- Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. ↩
9. Section 6501(c)(4) provides: Extension by agreement. -- Where, before the expiration of that time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. ↩
10. Petitionrs have not asserted that the deficiency attributable to their disallowed partnership loss is barred by the statute of limitations. ↩
11. A Form 872 extends the statute of limitations for a specific period of time. ↩
12. A form 872-R extends the statute of limitations to specific items only. ↩
13. Petitioners rely on the following excerpts taken from respondent's brief: petitioners never requested any restricted waiver from respondent * * *. Since petitioners never advised any of respondent's agents that they believed the Form 872-A did not extend the statute of limitations regarding their 1979 master recording activity until they filed their petition * * *, they must not be allowed to repudiate their valid waiver at this late date. ↩
14. See Piarulle v. Commissioner, supra↩ at 1044 for the elements which must be established for estoppel to apply.