961 F.2d 216
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Rosemary ECKERSLEY and Estate of Dr. Franklin Ashley,
Deceased, by Rosemary Ashley (Eckersley),
Executrix, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 91-15059.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 14, 1992.
Decided April 24, 1992.
 
 1
 Before CYNTHIA HOLCOMB HALL and WIGGINS, Circuit Judges, and MUECKE* District Judge.
 
 
 2
 MEMORANDUM**
 
 OVERVIEW
 
 3
 Appellants appeal the grant of summary judgment against them and in favor of the government. Appellants sought a refund for tax assessments paid for the years 1978 and 1979, claiming the assessments were barred by the statute of limitations. The Internal Revenue Service ("IRS") maintains that appellants signed a valid waiver of the statute of limitations defense and cannot now claim that defense. Appellants argue that the waiver was not valid because there was no agreement as to its scope. In the alternative, appellants claim that the waiver was limited to one subject, a limitation with which the IRS failed to comply. The IRS argues, and the district court found in granting summary judgment, that the waiver was valid and unconditional. If the parties did agree to a limitation, the district court determined that it was a time limitation, with which the IRS properly complied. This court has jurisdiction over the timely appeal pursuant to 28 U.S.C. section 1291, and we affirm.
 
 STATEMENT OF FACTS
 
 4
 Rosemary Ashley Eckersley and her then husband, Dr. Franklin Ashley ("Ashleys"), filed joint federal income tax returns for the years 1978 and 1979 on or before April 15, 1979, and April 15, 1980, respectively. In May of 1980, the IRS began a review of the Ashleys' tax returns. The period for assessing any additional amounts for the Ashleys' 1978 and 1979 tax years would have expired on April 15, 1982 and April 15, 1983, respectively.
 
 
 5
 On February 17, 1982, IRS Revenue Agent, Masahide Zakahi, sent a Form 872[1] for the tax year 1977, and a Form 872-A[2] for the tax years 1978 and 1979 to Scott Brown, a legal assistant at the law firm representing the Ashleys in the tax matters. The forms were not signed by the IRS. The cover letter sent with the forms said that the Form 872-A for tax years 1978 and 1979 would extend the statute of limitations indefinitely. The letter said that such extension was necessary because:
 
 
 6
 the partnership of Harvest of which Franklin Ashley is a partner is currently under examination. Since we intend to solicit a partial agreement for the taxable years 1978 and 1979 based on the closing agreement and place the case in our suspense section until the resolution of the Harvest partnership issue, the extension of Form 872-A is solicited.
 
 
 7
 The Ashleys signed the Form 872-A on February 25, 1982, and Brown returned the form with an accompanying letter dated February 22 to Zakahi. The letter said in part that Brown "would like to confirm that upon the Ashleys' submission of Form 872-A for tax years 1978 and 1979, those years will be closed pending completion of your examination of Harvest Partners." Zakahi forwarded the form and the case file to his group manager, Sharon Rivard. Rivard reviewed the waiver and executed it on behalf of the IRS on March 1, 1982. She had not received the correspondence between Zakahi and Brown.
 
 
 8
 On May 21, 1982, appellants signed a Form 906, a Closing Agreement as to Final Determination Covering Specific Matters. A Form 906 is used when the taxpayers and the IRS have reached agreements on specific issues only. On July 9, 1982, Zakahi mailed a Form 870 to Brown which reflected the agreement reached in the closing agreement. The letter accompanying the form stated that the case "will be held in suspense until the closure of the Harvest Partnership for the taxable years 1978 and 1979 and Comark Partnership for the taxable year 1979."
 
 
 9
 On approximately July 13, 1982, Brown returned the signed Form 870, but sent a cover letter objecting to the review of the Comark Partnership.
 
 
 10
 In February, 1982, you agreed to close 1977, 1978 and 1979 pending a completion of the audit of Harvest Partners. This was agreed to by the taxpayer. You now want to include CoMark as an open item for 1979 (reference June 7, 1982 letter). We must object to your inclusion of CoMark in the Ashley's 1979 tax year since it was embodied as an open item after we struck our agreement.
 
 
 11
 Under the Form 870, appellants paid the amount assessed by the IRS and never made any objection to this amount.
 
 
 12
 On approximately January 22, 1985, the IRS notified appellants that they were disallowing partnership deductions for the years 1978 and 1979 relating to the Harvest Partnership and for the year 1979 relating to the Comark Partnership. The proposed income tax deficiencies were stated as $95,174.97 for 1978 and $309,373 for 1979.
 
 
 13
 Appellants new representative, Gerald Chapnick, filed a protest, which did not allege a statute of limitations defense. Appeals Officer Wong handled the protest and negotiated with appellants' representatives. Franklin Ashley died on February 13, 1985, and Rosemary Ashley (now Eckersley) became executrix of his estate. Appellants and the IRS reached a settlement, permitting deductions of $50,000 in the Harvest partnership and $150,000 in the Comark partnership. The settlement was reflected in a Form 870-AD, which Rosemary Eckersley signed. The IRS received the form on September 22, 1988 and signed it. Wong closed the case.
 
 
 14
 Appellants were assessed taxes in the amount reflecting the agreement. They paid the assessment, without interest, on August 16, 1989, and at the same time, filed for a refund. Nine days letter, their request for a refund was denied. On September 8, 1989, appellants filed this refund suit. After the IRS filed its answer, both parties filed for summary judgment.
 
 
 15
 The district court denied the taxpayers' motion for summary judgment without hearing on October 5, 1990. The court granted summary judgment in favor of the IRS.
 
 DISCUSSION
 
 16
 Because this is a review of a grant of summary judgment, the standard of review is de novo. Lucero v. Hart, 915 F.2d 1367, 1370 (9th Cir.1990).
 
 
 17
 Ordinarily, under section 6501(a) of the Internal Revenue Code, tax deficiencies must be assessed against a taxpayer within three years of the filing of the tax return. Otherwise, such deficiencies are barred by the statute of limitations. Under section 6501(c)(4), however, the taxpayer and IRS may execute a waiver of the statute of limitations for an agreed upon amount of time. The IRS uses two types of waivers. The first, a Form 872, expires on a stated date. The second, a Form 872-A, waives the statute of limitations for an indefinite period of time. To terminate it, a taxpayer must send the IRS a Form 872-T, a Notice of Termination of Special Consent to Extend the Time to Assess Tax. The IRS may terminate the 872-A by mailing to the taxpayer either a Form 872-T or a notice of a deficiency in taxes for the relevant tax period. Absent any of these actions, the 872-A expires when the IRS makes a final assessment, reflecting the final determination of taxes, including any administrative appeals.
 
 
 18
 An 872 or 872-A waiver is not a contract, but rather a waiver of a defense by the taxpayer. Piarulle v. Commissioner, 80 T.C. 1035, 1042 (1983). Section 6501(c)(4) requires the parties to reach a written agreement, so contract principles are important. Such an agreement does require mutual assent, but not consideration. Tallal v. Commissioner, 77 T.C. 1291, 1294 (1981). Whether the parties have made an agreement is determined by examining the parties' overt acts to find objective manifestations of mutual assent. 1 S. Williston, Contracts, § 22 (3rd ed. 1957); 1 Restatement (Second) of Contracts, § 19 (1979).
 
 
 19
 When the deficiency is issued by the IRS beyond the ordinary statute of limitations, the IRS bears the burden of showing a valid waiver. Adler v. Commissioner, 85 T.C. 535, 540 (1985). When the government can show a facially valid waiver, the burden shifts to the taxpayer to show that the waiver is invalid or somehow limited. The ultimate burden of proof always remains with the taxpayer. Id.
 
 
 20
 Appellants contend that there was no mutual assent to the Form 872-A and that the form is therefore void. This argument is based on the taxpayers' belief that the form was limited to the Harvest partnership, while the IRS believed the form was unlimited. But the tax cases are clear that what the parties subjectively believe or intend is no substitute for what was objectively stated. "[I]t is the objective manifestation of mutual assent as evidenced by the parties' overt acts, not the parties' intentions, that we must take into account in deciding whether the parties have reached an 'agreement' to extend the limitations period." Ribb v. Commissioner, T.C.Memo. 1988-379, 55 T.C.M. (CCH) 1597, 1600 (1988) (citations omitted).
 
 
 21
 The Form 872-A is unambiguous and signed by both parties. There is no clear language in the Brown letter indicating that the signing of the form was conditional. The tax courts have said that clear, unambiguous language is necessary to limit such forms.
 
 
 22
 There is no dearth of cases in which the taxpayer has taken the position that the restrictive terms of a transmittal letter accompanying an otherwise unrestricted Form 872 preclude a finding of the mutual assent necessary for a valid agreement to extend the period of limitations.... Notably, while the transmittal letters in each of the above referenced cases referred to the revenue agent's need to further examine a particular item, none of the letters purported to restrict the scope of the examination to the item so mentioned. Accordingly, we agreed with the respondent in those cases that the unrestricted Forms 872 executed by the parties were valid despite the taxpayers' reliance on language contained in the transmittal letters.
 
 
 23
 Hicks v. Commissioner, 62 T.C.M. (CCH) 1234, 1236 (1991), citations omitted.[3]
 
 
 24
 Appellants rely on the Hicks case to support their contention that there was no agreement. But the Hicks court found explicit language in the transmittal letter limiting the audit to one item. Unlike the Zakahi letter, which mentioned a particular item under review but did not expressly limit the waiver to that item, the IRS letter in Hicks said, "[t]he only issue that I will be auditing on your 1984 return is the Schedule E loss...." Hicks, 62 T.C.M. at 1235. In Hicks, the IRS then failed to limit its review to the Schedule E loss. The Hicks court thus found the waiver invalid. In contrast, Zakahi did not promise to limit the audit to the Harvest partnership. He simply explained to taxpayers that the partnership was under review and that the case would be open pending that review. The Brown letter sent with the taxpayers' executed Form 872-A mentions the Harvest partnership, but it fails expressly to limit the waiver. The only agreement of which there is objective manifestations of assent on behalf of both parties is the Form 872-A itself. We therefore find the waiver to be valid with no restrictions or limitations.
 
 
 25
 Even if we were willing to find a conflict between what the IRS believed and what Brown believed, the result in this case would not change. Brown had no authority to negotiate on behalf of the Ashleys, and therefore, his letter could not affect the waiver execution. Brown was merely a legal assistant--not the Ashleys' attorney or authorized representative. To be authorized to represent the Ashleys before the IRS, Brown had to be an attorney, a certified public accountant or an agent authorized to practice before the IRS. 31 C.F.R. §§ 10.2-3 (1991). Because he was not, the IRS would not have been able to bind the Ashleys to anything Brown signed. Similarly, the IRS was not bound by anything Brown attempted to negotiate. Therefore, because Brown was not authorized to represent the Ashleys to the IRS, the letter accompanying the Form 872-A had no legal effect.
 
 
 26
 AFFIRMED.
 
 
 
 *
 Hon. Carl A. Muecke, United States District Judge for the District of Arizona, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Form 872 is a Consent to Extend the Time to Assess Tax; it is a waiver of the statute of limitations defense by the taxpayers. It is fixed to expire on a certain date unless a notice of deficiency is issued on or before the date specified on the form
 
 
 [2]
 Like a Form 872, an 872-A is a waiver of the statute of limitations. This form, however, has no fixed time limit. It extends the statute of limitations indefinitely until the taxpayer or IRS revokes it using the means specified in the agreement
 
 
 [3]
 In one such case, Sager v. Commissioner, 55 T.C.M. (CCH) 758 (1988), the transmittal letter from the IRS requesting the waiver expressly mentioned two partnership investments which the IRS was investigating and needed more time to complete such investigations. The letter did not mention another item for which the taxpayers were later assessed a tax deficiency. It did not matter that taxpayers thought the waiver was limited to the two partnerships, the court said. There was no such express limitation. Id